# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# DANVILLE DIVISION

| | |
|---|---|
| DONALD WILSON, | }<br>} |
| Plaintiff, | }<br>} |
| v. | } Case No. 4:23-cv-00020 <br> } |
| PAMELA MICHELLE O'DELL, PA-C, | }<br>} |
| Defendant. | } |

## AMENDED COMPLAINT

NOW COMES Plaintiff, Donald Wilson, and moves for judgment against Defendant, Pamela Michelle O'Dell, PA-C, on the grounds and in the amount as hereinafter set forth:

## PARTIES

1. At all times relevant to this action, Plaintiff, Donald Wilson (hereinafter "Plaintiff"), resided in the City of Danville, Virginia.

2. Upon information and belief, at all times relevant to this action, Defendant, Pamela Michelle O'Dell, PA-C (hereinafter "Defendant O'Dell") at all times herein mentioned is and was a physician assistant duly licensed to practice medicine under the laws of the Commonwealth of Virginia and was an agent, representative, and employee of Piedmont Access to Health Services, Inc., d/b/a Paths Community Medical Center - Danville, (hereinafter "PATHS") a Virginia corporation. Defendant O'Dell's medical specialty is behavioral health.

## FACTS

3. Plaintiff came under the care of Defendant O'Dell on or about July 24, 2019, as a patient of Defendant O'Dell in her capacity as a physician assistant employed by PATHS who provided psychiatric and behavioral health services, including the prescribing of medication, to

Plaintiff. During Defendant O'Dell's treatment of Plaintiff, she became familiar with his physical, mental, and emotional history.

4. Plaintiff has a history of recurrent major depressive disorder with psychotic features, chronic post-traumatic stress disorder and bipolar 1 disorder. In addition to these diagnoses, Plaintiff suffered from hallucinations, anxiety, hypervigilance, paranoia, and panic attacks. He attended behavioral health appointments through PATHS to manage, maintain, and support his physical, mental, emotional and psychiatric health.

5. On or about April 26, 2019, during a behavioral health visit with PATHS, Plaintiff shared he does not trust authority figures 'because they lie' in his experience.

6. On or about July 10, 2020, Plaintiff had a remote video telehealth visit with Defendant O'Dell. Defendant O'Dell had displayed a large "Stars and Bars" confederate battle flag adorned with lights on her wall and a large Trump flag leaning in the corner of her office next to the confederate flag. During this telehealth visit, Plaintiff noticed this confederate flag on the wall to the left of Defendant O'Dell. Plaintiff told Defendant O'Dell that the confederate flag bothered him. Defendant O'Dell denied that the confederate flag existed and told Plaintiff that he was hallucinating. Plaintiff took a screenshot of the computer showing the confederate flag before Defendant O'Dell moved her computer so that the confederate flag was no longer visible to Plaintiff. After being told that he was seeing things and that he was hallucinating, Plaintiff disconnected from the telehealth visit.

7. In her office note for the July 10, 2020, telehealth visit with Plaintiff, Defendant O'Dell self-servingly and to the detriment to Plaintiff added to her office note ". . . admits to hallucinations . . . ." In a separate "Telephone Encounter" note that day, Defendant O'Dell, fully aware that her statement was false, deliberately claimed that Plaintiff was exhibiting significant

2

paranoia today, intending to misrepresent the medical record in order to deceive and to protect herself and knowing it would injure Plaintiff. Further Defendant O'Dell, again with full awareness that her entry into Plaintiff's medical record was false intentionally misrepresenting the medial record in order to deceive and to protect herself and knowing that such entry would injure Plaintiff, stated: "Accused me of having a confederate flag on my wall. I assured him that I didn't have a confederate flag on my wall and that I agreed that black lives matter, all lives matter." She suggested to Plaintiff that he not watch the news and instead "watch something on TV that would calm him down and not increase his paranoia." She went on to say, "I feel that it would be in everyone's best interest to refer him elsewhere."

8. Defendant O'Dell, self-interestedly and to protect herself to the detriment of Plaintiff, intentionally and maliciously attempted to manipulate Plaintiff by psychological means by having or attempting to have Plaintiff question his own reality and sanity. She deliberately exploited his past history of hallucinations, intending to harm him while serving her own selfish interests and gain.

9. At this same visit, Defendant O'Dell denied the existence of the flags and told Plaintiff he was hallucinating and then falsely wrote in Plaintiff's medical chart that he was hallucinating to protect herself at the detriment of Plaintiff's well-being and his mental health and knowing that it would injure Plaintiff. Defendant O'Dell intended to harm Plaintiff by using his own psychiatric history against him.

10. After Defendant O'Dell falsely documented with willful and malicious intent to deceive and misrepresent Plaintiff's medical chart, she referred him to another provider, while knowing Plaintiff was actively suffering from mental diagnoses, in a fragile mental state, and needed behavioral health services.

11. Defendant O'Dell knew that because of her conduct to Plaintiff, her psychiatric patient with multiple diagnoses, emotional and psychological distress would likely result from her conduct.

12. Defendant O'Dell chose to abuse and exploit Plaintiff and Plaintiff's mental health diagnoses, his African American race, and his indigent status to protect and serve her own self-interest, well-being, employment status, reputation, and her professional standing at the expense of Plaintiff's well-being and his mental and physical health.

13. Defendant O'Dell, in her capacity as Plaintiff's healthcare provider and during a psychiatric telehealth visit, used her power and authority over Plaintiff to inflict emotional distress by denying the flag's existence and telling Plaintiff that he was hallucinating.

14. Defendant O'Dell, knowing that Plaintiff was suffering various psychiatric diagnoses at the time and peculiarly susceptible to emotional distress, intentionally, and with premeditation, abused her authority and status as Plaintiff's treating physician to inflict emotional distress.

15. After this telehealth visit with Defendant O'Dell, Plaintiff had great fear and anxiety regarding the medications that Defendant O'Dell had prescribed to him.

16. As a direct result of Defendant O'Dell's conduct, Plaintiff has suffered a wide range of physical, psychological, and emotional suffering. These include persistent headaches and migraines, loss of appetite, insomnia, nightmares, fatigue, intensified mood swings, heightened panic attacks, increased anxiety and depression, and overwhelming feelings of hopelessness. Plaintiff has also experienced significant gastrointestinal issues such as nausea and difficulty with bowel movements, as well as muscle tension. Additionally, Plaintiff now struggles with distrust in healthcare providers, memory lapses, difficulty focusing, intrusive

thoughts, social withdrawal, and self-isolation. Notably, Plaintiff's anxiety medication dosage has increased since this incident. After this incident happened, Plaintiff struggled with finding a new mental health provider, which also escalated his underlying mental health symptoms, caused a decline in his physical heath, placed him at undue risk for harm to himself, and placed the community at undue risk. Plaintiff still has not been able to completely communicate with any provider about this mental health because of his distrust caused by Defendant O'Dell's actions and by how she denied that the confederate flag existed when it certainly did exist. Plaintiff's now extreme distrust of authority figures has made it difficult for him to attend essential behavioral health treatments. These treatments are critical for him to continue receiving his prescribed medications.

17. As a direct result of Defendant O'Dell's conduct, Plaintiff's personal relationships, namely his relationship with his wife, have deteriorated as a result of his heightened depression, anxiety, and recurring nightmares. Since this incident with Defendant O'Dell, Plaintiff has become increasingly irritable and quicker to anger with his wife, and he has experienced a noticeable decline in physical and emotional affection toward her.

18. Additionally, as a direct result of Defendant O'Dell's conduct, Plaintiff is unable to connect mentally and emotionally with others, such as his friends and members of his community. Plaintiff no longer maintains social acquaintances, refrains from attending social gatherings, and is unable to build new friendships due to his fear of betrayal and growing distrust in others.

## COUNT I – WILLFUL AND WANTON CONDUCT

19. Plaintiff reaffirms, repleads, and incorporates by reference the allegations made in paragraphs 1 through 18 in Plaintiff's Complaint.

20. At all times relevant hereto, it was the duty of Defendant O'Dell to exercise and to possess that degree of knowledge, skill, care, and diligence that is practiced by reasonably prudent practitioners in the same field of practice or specialty practicing in the same locality, in a similar locality, or in the Commonwealth of Virginia.

21. Notwithstanding said duties, Defendant O'Dell violated these duties and did then and there so willfully, wantonly, and recklessly fail to provide proper behavioral health care in that with actual or constructive awareness she chose to boldly display a confederate flag during a telehealth visit with Plaintiff, for whom she was providing psychiatric and behavioral health services and who is an African American, and she then willfully and wantonly chose to deny that the confederate flag was there on the wall after Plaintiff saw it and after he told her that he saw it and that its presence upset him. Despite Plaintiff's clear expression of distress upon seeing the flag and informing Defendant O'Dell of the emotional harm it caused, Defendant O'Dell willfully and wantonly denied its presence, dismissing Plaintiff's concerns and providing emotional and mental health services to care for this acute emotional harm that she had caused. Instead of offering a simple apology to Plaintiff or referring him to a different behavioral health therapist within PATHS, Defendant O'Dell intentionally, willfully, and wantonly chose to deny the existence of the flags, further injury Plaintiff, and exploit Plaintiff's mental health diagnoses to her benefit and to Plaintiff's detriment. Further, Defendant O'Dell deliberately and falsely informed Plaintiff that he was hallucinating the confederate flag with the intent of shielding herself from responsibility and with the intent of inflicting further emotional, psychological, and psychiatric harm on Plaintiff. Subsequently, Defendant O'Dell falsified Plaintiff's medical records, falsely stating that he was hallucinating and requested Plaintiff to be referred to another healthcare provider. Defendant O'Dell acts of deception demonstrate an abuse of her power and

authority as Plaintiff's healthcare provider, further exacerbating Plaintiff's emotional distress and violating her professional duties to him.

22. Defendant O'Dell was experienced and trained in providing psychological, psychiatric, and behavioral health services to patients. She knew that Plaintiff suffered from psychiatric, behavioral, and mental health disorders that could be exacerbated by the depiction of the confederate flag in a therapeutic, professional setting, and knew that Plaintiff would be psychologically and emotionally injured when she falsely told Plaintiff that he was hallucinating.

23. Despite this knowledge, Defendant O'Dell willfully, wantonly and recklessly and with conscious disregard of the danger of her conduct to Plaintiff's psychiatric, behavioral, and mental health and well-being chose to display the confederate flag during a telehealth visit with Plaintiff. Defendant O'Dell then willfully and wantonly chose to deny that she had displayed the confederate flag and stated falsely that Plaintiff was hallucinating. In further detriment to Plaintiff's psychiatric, behavioral, mental health and well-being, she requested that Plaintiff be referred out from care and treatment at PATHS. Defendant O'Dell chose to abuse and exploit Plaintiff's mental health diagnoses, to serve and protect herself at the detriment of Plaintiff, and to act contrary to her patient's well-being and mental health knowing that she would cause harm and injury to Plaintiff. Defendant O'Dell intentionally and recklessly violated the applicable standard of care and the Physician Assistant Professional Oath.

24. As a direct and proximate result of the willful and wanton conduct and the violation of the applicable standard of care committed by Defendant O'Dell, Plaintiff was caused to sustain severe, permanent mental injuries; has suffered in the past and will continue to suffer in the future deleterious effects to his health from these mental and emotional injuries; has

suffered in the past and will continue to suffer in the future mental anguish; has suffered in the past and will continue to suffer in the future inconvenience to life and loss of enjoyment of life; and was caused to incur in the past and will incur in the future therapy, counseling, and other related health care bills in an effort to be treated for said emotional and mental injuries, and because of her wanton and willful conduct aforementioned, Defendant O'Dell is liable to Plaintiff for punitive damages.

### COUNT II – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

25. Plaintiff reaffirms, repleads, and incorporates by reference the allegations made in paragraphs 1 through 24 in Plaintiff's Complaint.

26. At all times relevant hereto, it was the duty of Defendant O'Dell as an individual and as a psychiatric and mental health care provider to obey the laws of Virginia and to refrain from committing intentional acts upon Plaintiff, specifically not to commit intentional acts of emotional distress upon Plaintiff.

27. By engaging in the conduct previously described in Plaintiff's Complaint, Defendant O'Dell violated applicable standards of care, and her duty as stated hereinabove when she acted with the specific purpose of inflicting emotional distress and injury on Plaintiff when she knew her conduct would likely result in emotional distress and harm.

28. Defendant O'Dell's actions toward Plaintiff were intentional, extreme, outrageous, intolerable, and offend the generally accepted standards of decency and morality and were carried out in violation of her duty. Defendant O'Dell abused her power and authority as Plaintiff's healthcare provider to falsely deny his reality and what he is actually seeing and then medically diagnosed Plaintiff with hallucinations. As Plaintiff's treating behavioral health physician assistant, Defendant O'Dell knew Plaintiff's psychiatric health and knew he was in a

psychiatric, psychological, and emotionally fragile state and in a particularly acute state of distress caused by seeing the confederate flag, and even with this knowledge, she intentionally exploited Plaintiff's psychiatric health, causing him to question his own reality and sanity, and falsified his medical records. Defendant O'Dell then requested Plaintiff be referred to a new healthcare provider, acting with an intentional and reckless disregard for Plaintiff's rights and the impact of his future psychiatric treatment and doing so without ensuring that Plaintiff had another mental health care provider to actively prescribe his psychiatric medications and to provide mental health care to Plaintiff.

29. As a direct and proximate result of the intentional infliction of emotional distress and the violation of the applicable standard of care committed by Defendant O'Dell, Plaintiff was caused to sustain severe, permanent mental injuries; has suffered in the past and will continue to suffer in the future deleterious effects to his health from these mental and emotional injuries; has suffered in the past and will continue to suffer in the future mental anguish; has suffered in the past and will continue to suffer in the future inconvenience to life and loss of enjoyment of life; and was caused to incur in the past and will incur in the future therapy, counseling, and other related health care bills in an effort to be treated for said emotional and mental injuries, and because of her intentional infliction of emotional distress aforementioned, Defendant O'Dell is liable to Plaintiff for punitive damages.

WHEREFORE, Plaintiff, Donald Wilson, demands judgment against Defendant, Pamela Michelle O'Dell, PA-C, in the sum of Seven Million, Five Hundred Thousand and 00/100 Dollars ($7,500,000.00), in compensatory damages; and the sum of Ten Million and 00/100 Dollars ($10,000,000.00) in punitive damages, and his costs expended in this action, all with pre-judgment and post-judgment interest allowed by law.

A trial by jury is demanded.

DONALD WILSON

By Counsel

/s/ Bettina C. Altizer
Bettina C. Altizer, Esq. (VSB No. 31753)
Altizer Law, P.C.
324 Washington Avenue, SW
Roanoke, VA 24016
540-345-2000 - Phone
540-345-4490 - Fax
baltizer@altizerlaw.com