CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
December 03, 2024
LAURA A. AUSTIN, CLERK
BY: s/B. McAbee
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| DONALD WILSON, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 4:23-cv-00020 |
| PAMELA MICHELLE O'DELL, PA-C, | ) By: Elizabeth K. Dillon |
| Defendant. | ) Chief United States District Judge |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Donald Wilson brings this action against defendant Pamela Michelle O'Dell, PA-C seeking damages in relation to a telehealth appointment that occurred on or about July 10, 2020. Pending before the court is O'Dell's motion to dismiss Wilson's amended complaint. (Dkt. No. 45.) In the amended complaint, Wilson brings two claims against O'Dell: (Count I) Willful and Wanton Conduct, and (Count II) Intentional Infliction of Emotional Distress. (Am. Compl., Dkt. No. 44.) After full briefing and oral argument, the Court ruled from the bench, denying O'Dell's motion to dismiss Count II. (Dkt. No. 53.) The only remaining issue is whether Wilson has stated a claim for willful and wanton conduct given his clarification at the hearing that any physical injuries he suffered were manifestations of his emotional injuries. For the following reasons, the court will deny O'Dell's motion to dismiss the willful and wanton conduct claim.

I. BACKGROUND

Wilson came under the care of O'Dell on or about July 24, 2019, in her capacity as a physician assistant employed by Piedmont Access to Health Services, Inc., d/b/a Paths Community Medical Center – Danville (PATHS). (Am. Compl. ¶ 3.) Wilson had "a history of

recurrent major depressive disorder with psychotic features, chronic post-traumatic stress disorder[,] and bipolar 1 disorder." (*Id.* ¶ 4.) In addition, Wilson suffered from "hallucinations, anxiety, hypervigilance, paranoia, and panic attacks." (*Id.*) Wilson does not trust authority figures "because they lie," and shared this during one health visit with PATHS. (*Id.* ¶ 5.) O'Dell provided Wilson with psychiatric and behavioral health services, including prescribing him medication to treat his medical conditions. (*Id.* ¶ 3.)

On or about July 10, 2020, Wilson had a telehealth visit with O'Dell. During that visit, Wilson noticed a large "Stars and Bars" confederate battle flag "adorned with lights" on the wall in the corner of O'Dell's office. Wilson told her that the confederate flag bothered him. Denying that the confederate flag existed, O'Dell told him that he was hallucinating. Wilson proceeded to take a screenshot of his computer showing the confederate flag before O'Dell moved her computer so that the confederate flag was no longer visible on the screen. After being told that he was hallucinating and seeing things, Wilson disconnected from the telehealth visit. (*Id.* ¶ 6.)

In her patient meeting notes that day, O'Dell wrote that Wilson "admits to hallucinations" and claimed that Wilson was exhibiting significant paranoia. She further stated that Wilson "[a]ccused me of having a confederate flag on my wall. I assured him that I didn't have a confederate flag on my wall and that I agreed that black lives matter, all lives matter." She suggested to Wilson that he not watch the news and instead "watch something on TV that would calm him down and not increase his paranoia." She went on to say, "I feel that it would be in everyone's best interest to refer him elsewhere." (*Id.* ¶ 7.)

Wilson alleges that O'Dell "intentionally and maliciously attempted to manipulate [Wilson] by psychological means by having or attempting to have [Wilson] question his own

2

reality and sanity." (*Id.* ¶ 8.) Furthermore, she intentionally misrepresented the medical record "to protect herself at the detriment of [Wilson's] well-being and his mental health and knowing that it would injure [Wilson]. (*Id.* ¶ 7, 9.) Wilson alleges that "O'Dell chose to abuse and exploit [him and his] mental health diagnosis, his African American race, and his indigent status to protect and serve her own self-interest, well-being, employment status, reputation, and her professional standing at the expense of [Wilson's] well-being and his mental and physical health." (*Id.* ¶ 12.)

After the telehealth visit, Wilson alleges that he had great fear and anxiety regarding the medications that O'Dell had prescribed him. (*Id.* ¶ 15.) In addition, he contends that he suffered a wide range of physical, psychological, and emotional suffering, including:

> [P]ersistent headaches and migraines, loss of appetite, insomnia, nightmares, fatigue, intensified mood swings, heightened panic attacks, increased anxiety and depression, and overwhelming feelings of hopelessness. Plaintiff has also experienced significant gastrointestinal issues such as nausea and difficulty with bowel movements, as well as muscle tension. Additionally, Plaintiff now struggles with distrust in healthcare providers, memory lapses, difficulty focusing, intrusive thoughts, social withdrawal, and self-isolation.

(*Id.* ¶ 16.) He had difficulty finding a new healthcare provider thereafter, and his anxiety medication dosage has since increased as a result of the incident. (*Id.*) Wilson "still has not been able to completely communicate with any provider about this mental health because of his distrust caused by [] O'Dell's actions. . . . [Wilson's] now extreme distrust of authority figures has made it difficult for him to attend essential behavioral health treatments." (*Id.*) He is unable to connect mentally or emotionally with others, and "no longer maintains social acquaintances, refrains from attending social gatherings, and is unable to build new friendships due to his fear of betrayal and growing distrust in others." (*Id.* ¶ 18.)

In the claim for willful and wanton conduct, Wilson incorporates the above-alleged physical injuries by reference (*id.* ¶ 19), but in the causation paragraph, he alleges only that the willful and wanton conduct caused him to sustain mental and emotional injuries (*id.* ¶ 24). At the hearing, though, Wilson's counsel clarified that Wilson is alleging that his physical injuries were manifestations of his mental and emotional injuries. The court analyzes the claim based upon that clarification.

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In determining whether the plaintiff has met this plausibility standard, the court must accept as true all well-pleaded facts in the complaint and any documents incorporated into or attached to it. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it "need not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments.'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)

(quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

## III. DISCUSSION

In addition to other arguments that the court resolved at the hearing, O'Dell argues that Wilson's claim for willful and wanton conduct fails because he does not allege a physical injury. (Mem. Supp. Mot. Dismiss 5–7, Dkt. No. 46.) "Rather, Wilson only claims in Count I that he sustained 'emotional harm' and 'emotional, psychological, and psychiatric harm' due to O'Dell's conduct." (*Id.* at 7.) She contends that the amended complaint "does not allege that [Wilson] sustained an emotional disturbance resulting from an actual physical injury—and he could not as he does not allege any physical contact between himself and O'Dell." (*Id.*) Since O'Dell maintains that physical injury is necessary, she argues that Wilson's willful and wanton conduct claim should be dismissed with prejudice. The court disagrees.

Despite the fact that willful and wanton conduct is often referred to as willful and wanton negligence, Virginia law generally distinguishes merely negligent conduct and willful and wanton conduct. To establish a claim of willful and wanton conduct, Wilson must allege that O'Dell "was conscious of [her] conduct, and conscious, from [her] knowledge of existing conditions, that injury would likely or probably result from [her] conduct, and that with reckless indifference to consequences [she] consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result." *Infant C. v. Boy Scouts of America, Inc.*, 391 S.E.2d 322, 327 (Va. 1990) (citing *Thomas v. Snow*, 174 S.E. 837, 839 (1934)).

O'Dell cites to several cases to support her argument that Wilson must allege a physical injury in order to bring a willful and wanton conduct claim. She relies upon *Myseros v. Sissler*, 387 S.E.2d 463, 464 (Va. 1990), which involved a court setting aside a jury verdict that awarded

5

damages for a negligence action. The plaintiff was operating a tank truck when another vehicle crashed into him from behind. *Id.* He stopped the vehicle on the highway to inspect for damage and was almost struck by oncoming traffic on multiple occasions. *Id.* The incident led to the onset of post-traumatic stress disorder, which subsequently developed into an anxiety disorder and a debilitating phobia of driving any motor vehicle. *Id.* 464–65. This disorder was accompanied by "sweating, dizziness, nausea, difficulty in sleeping and breathing, constriction of the coronary vessels, two episodes of chest pain, hypertension, unstable angina, an electrocardiogram showing marked ischemia, loss of appetite and weight, change in heart function, and problems with the heart muscle." *Id.* at 465. The plaintiff claimed that his "physical injuries were manifestations of the anxiety caused by the [traffic] accident, . . . squarely comporting with *Hughes v. Moore*."[1] *Id.* at 466. The court found otherwise, finding that there was not "clear and convincing evidence of 'symptoms' or 'manifestations' of physical injury." *Id.* at 466. Rather, the plaintiff just provided "'typical symptoms of an emotional disturbance,' for which there can be no recovery under *Hughes v. Moore* in the absence of a resulting physical injury." *Id.*

In her brief, O'Dell also cites to *Hickman v. Lab. Corp. of Am. Holdings*, No. 1:05-cv-00049, 2006 U.S. Dist. LEXIS 72983, *1 (W.D. Va. Oct. 6, 2006), which involved a plaintiff receiving a false positive HIV test result. The plaintiff developed severe stress, which resulted in "numerous physical and emotional problems such as weight loss, hair loss, insomnia, heart

---

[1] In *Hughes v. Moore*, 197 S.E.2d 214 (Va. 1973), the court found that plaintiff could bring a negligence action against defendant because she sustained physical injuries—namely the inability to breast feed her three-month-old baby and premature resumption of her menstrual period—which were the "natural result of the fright and shock proximately caused" by defendant crashing his vehicle into the front porch of plaintiff's house, as she looked through her doorway window. *Id.* at 214–20. Because the claim was for emotional injury and the physical injury that resulted, "there may be recovery for negligent conduct, notwithstanding the lack of physical impact, provided the injured party properly pleads and proves by clear and convincing evidence that his physical injury was the natural result of fright or shock proximately caused by the defendant's negligence." *Id.* at 219.

palpitations, panic attacks, flushing, shakiness, tremors, lack of focus and lack of concentration." *Id.* *3–4. The court noted that it could not "understand the Supreme Court of Virginia's ruling that the plaintiff in *Hughes* provided 'clear and convincing evidence of 'symptoms' or 'manifestations' of physical injury,' but that the plaintiff in *Myseros* had proven only 'typical symptoms of an emotional disturbance' not rising to the level of a physical injury." *Id.* at *15. Although it could not reconcile the two cases, it nonetheless applied *Myseros* because it was "the Supreme Court of Virginia's more recent pronouncement." *Id.* at *17. As such, it found the plaintiff's negligence claim failed as a matter of law because the plaintiff had not provided "proof that she suffered from a physical injury, as opposed to physical symptoms or manifestations of an underlying emotional disturbance." *Id.* at *18.

  Notably, the above-cited cases relied upon by O'Dell are cases alleging only negligent conduct and not willful and wanton conduct. The only case O'Dell cites regarding a willful and wanton conduct claim is that of *Contreras v. Thor Norfolk Hotel, L.L.C.*, 292 F. Supp. 2d 798, 799 (E.D. Va. 2003), which involved a plaintiff who was allegedly wrongfully exposed to asbestos while working on a renovation project. Plaintiff alleged that he suffered from "headaches, coughing, sore throat, irritated eyes, wheezing, shortness of breath and chest tightness and pain," after being exposed to asbestos on a job site. *Id.* at 801. Under Virginia law, a cause of action for an injury "resulting from exposure to asbestos" accrues when "a diagnosis of asbestosis, interstitial fibrosis, mesothelioma, or other disabling asbestos-related injury or disease is first communicated to the person or his agent by a physician." *Id.* (citing Va. Code Ann. § 8.01-249(4) (2003)). Given that the plaintiff only alleged that he had a "fear of developing asbestosis" and an "increased risk of developing asbestosis," the court found he had not sufficiently alleged a physical injury. *Id.* The plaintiff also alleged psychological injuries,

7

including "emotional distress" and "fear of developing" asbestosis and cancer. *Id.* Relying on the Fourth Circuit's holding in *Ball v. Joy Technologies, Inc.*, 958 F.2d 36, 39 (4th Cir. 1991), the court found that because the plaintiff had not alleged physical injury, he could not recover from psychological damages on his claims of negligence, willful or wanton conduct, fraud, or battery.[2] *Id.* at 801–02.

Because *Contreras* involved an asbestos-related injury governed by a specific statute, it does not provide a good analogy to the case before the court. Rather, the general law of Virginia regarding emotional damages and willful and wanton conduct will be applied. Under that law, a sufficient allegation of willful and wanton conduct would allow for recovery for emotional harm and physical manifestations thereof. "Absent a contemporaneous impact to the plaintiff, a plaintiff must prove that the defendant's conduct was willful, wanton or vindictive and not merely negligent, to recover solely for emotional damages." *C.T.L. v. People Inc. of S. Va.*, No. 1:05-cv-00004, 2005 U.S. Dist. LEXIS 48479, *6 (W.D. Va. Oct. 27, 2005) (citing *Soldinger v. U. S.*, 247 F. Supp. 559, 560 (E.D. Va. 1965)); *see also Fairfax Hosp. by & Through INOVA Health Sys. Hosps. v. Curtis*, 492 S.E.2d 642, 644 (Va. 1997) ("As a general rule, in tort cases, absent accompanying physical harm or wanton and willful conduct, emotional distress damages are not recoverable." (internal citations omitted)); *Vasterling v. Dirle*, No. 2:22-cv-339, 2023 WL 3727930, *10 (E.D. Va. May 30, 2023) ("Importantly, damages can be awarded for emotional disturbance, without physical impact, when the tortious conduct is willful, wanton, or vindictive." (citing *Hughes*, 197 S.E.2d at 219)).

---

[2] Interestingly, *Contreras* also mentions that courts in Virginia "have recognized that damages for emotional distress may be recovered . . . where there is no impact or physical injury but emotional disturbance results from an *intentional or wanton wrongful act* caused by the defendant." *Contreras*, 292 F. Supp. 2d at 802 (emphasis added). Although the *Contreras* court seems to conflate the negligence and willful and wanton claims, dismissing both due to the failure to sufficiently plead a physical injury, the case law clearly establishes that each claim is distinct from the other.

In his amended complaint, Wilson sufficiently alleges that O'Dell was conscious of her conduct. Specifically, Wilson alleges that O'Dell chose to display the confederate flag in her room where the telehealth appointment was taking place, she "willfully and wantonly chose to deny that the confederate flag was [] on the wall after [Wilson] saw it and after he told her that . . . its presence upset him," she told Wilson "that he was hallucinating the confederate flag," and she deliberately falsified medical records to support the falsehood she was promoting. (Am. Compl. ¶ 21.) Furthermore, the amended complaint sufficiently alleges that O'Dell was conscious, from her knowledge of Wilson's existing conditions, that injury would likely or probably result from her conduct. O'Dell "was experienced and trained in providing psychological, psychiatric, and behavioral health services to patients." (*Id.* ¶ 22.) She knew that Wilson "suffered from psychiatric, behavioral, and mental health disorders that could be exacerbated by the depiction of the confederate flag in a therapeutic, professional setting, and knew that [Wilson] would be psychologically and emotionally injured when she falsely told [him] that he was hallucinating." (*Id.*) Lastly, the amended complaint sufficiently alleges that O'Dell consciously and intentionally did some wrongful act, with reckless indifference to consequences, that injured Wilson. "O'Dell willfully, wantonly and recklessly and with conscious disregard of the danger of her conduct on Wilson's psychiatric, behavioral, and mental health and well-being chose to display the confederate flag during a telehealth visit," and then "chose to deny that she displayed the confederate flag and stated falsely that [Wilson] was hallucinating." (*Id.* ¶ 23.) Wilson alleges she chose to "abuse and exploit [Wilson's] mental health diagnosis, to serve and protect herself at the detriment of [Wilson], . . . knowing that she would cause harm and injury to [Wilson]." (*Id.*) She then requested that Wilson be referred out from under her care and treatment at PATHS. (*Id.*) Wilson has alleged a variety of physical,

9

psychological, and emotional injuries, as noted above. (*See* discussion *supra*, Section I.) Therefore, accepting all well-pleaded factual allegations in Wilson's amended complaint as true, and drawing all factual inferences in his favor, the court finds that Wilson has sufficiently alleged a willful and wanton conduct claim against O'Dell.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, it is hereby ORDERED that defendant Pamela Michelle O'Dell's motion to dismiss the amended complaint (Dkt. No. 45) as to Count I—Willful and Wanton Conduct—is DENIED.

The Clerk is directed to send a copy of this memorandum opinion and order to all counsel of record.

Entered: December 3, 2024.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge