IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

AUG 11 2025

LAURA A. AUSTIN, CLERK
BY:  s/ H. MCDONALD
DEPUTY CLERK

DONALD WILSON,            )
                          )
        Plaintiff,        )
                          )
v.                        )    Civil Action No. 4:23-cv-00020
                          )
PAMELA MICHELLE O'DELL, PA-C,  )   By:  Elizabeth K. Dillon
                          )        Chief United States District Judge
        Defendant.        )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Donald Wilson brings this action against defendant Pamela Michelle O'Dell,

PA-C, seeking damages arising from a telehealth appointment that occurred on or about July 10,

2020.  Currently before the court is O'Dell's motion for certification of her employment with

Piedmont Access to Health Services, Inc. (PATHS), a federally funded health center.  (Dkt. No.

16.)  She requests that the court overturn the determination by the Office of the Attorney General

(Attorney General) that she was not acting within the scope of her employment with PATHS at

the time of the incident giving rise to this action.  O'Dell argues that she was acting within the

scope of her employment during all relevant times, and therefore the United States should be

substituted as the proper party defendant pursuant to 42. U.S.C. § 233($l$)(2),[1] and that she be

dismissed from the case with prejudice.  Because the court finds that it does not have the

authority under § 233 to review negative coverage determinations by the Attorney General, the

court will deny O'Dell's motion to certify her employment.

---

[1]  42. U.S.C. § 233, also known as the Federally Supported Health Centers Assistance Act (FSHCAA), will
be referred to in this opinion simply as § 233 or the FSHCAA.

I.  BACKGROUND

**A.  Factual Background**

The court incorporates the summary of factual allegations from Wilson's amended complaint, as detailed in the background section of its December 3, 2024 memorandum opinion and order addressing O'Dell's prior motion to dismiss.  (*See* Dkt. No. 56, 1–4.)  Briefly, while employed by PATHS, O'Dell provided Wilson with psychiatric and behavioral health services, including prescribing medication to treat his various mental health conditions.  Wilson alleges that during a telehealth appointment he saw a Confederate flag in O'Dell's office and expressed that it made him uncomfortable.  In response, O'Dell denied the flag's presence, repositioned her computer camera so that the flag was not visible, and told Wilson he was hallucinating—a symptom of the mental health disorders for which she was treating him.  Wilson further alleges that O'Dell falsified her clinical notes by stating he hallucinated the flag and recommended that he be referred to another medical provider.  Wilson claims that O'Dell exploited his mental health diagnosis and misrepresented the incident in his medical records to protect herself, thereby knowingly causing him significant physical, psychological, and emotional suffering.  As the complaint now stands, Wilson asserts two claims against O'Dell: (I) Willful and Wanton Conduct; and (II) Intentional Infliction of Emotional Distress.  O'Dell has filed an answer to the amended complaint, and discovery is ongoing.

**B.  Procedural Background**

Wilson initially filed suit against O'Dell and PATHS on July 5, 2022, in the Circuit Court for the City of Danville.  (Dkt. No. 1-1, 2–18.)  The registered agent of PATHS received notice of the suit on February 21, 2023.  (*Id.* at 1.)  Shortly thereafter, PATHS notified the Department of Health and Human Services of the complaint and requested coverage for both O'Dell and

PATHS under § 233.  On March 16, 2023, the U.S. Attorney's Office received notice of the

action and, the following day, filed a limited appearance in state court to advise that a

determination regarding coverage under § 233 had not yet been made.  (Dkt. No. 6, 31–32.)

On September 1, 2023, the United States removed the case to this court pursuant to

§ 233(c), based on a certification that PATHS was a deemed employee of the United States

Public Health Service (PHS) acting within the scope of its employment at the time of the alleged

incident.  (Dkt. No. 1-2.)  On September 5, 2023, the United States moved to substitute itself as a

defendant in place of PATHS but specifically noted that it was not seeking substitution for

O'Dell.  (Dkt. No. 3, 1 n.1.)  That same day, it notified O'Dell that she was not acting within the

scope of her employment at the time of the incident, and thus her request for certification was

denied.  (Dkt. No. 17-1.)  On September 7, 2023, the court granted the motion to substitute, and

PATHS was dismissed as a defendant.  (Dkt. No. 5.)

On November 1, 2023, the United States moved to dismiss the claims against it for lack

of subject-matter jurisdiction, citing Wilson's failure to exhaust administrative remedies.  (Dkt.

No. 8.)  Wilson did not oppose the motion, explaining that he was unaware PATHS was a PHS

employee (Dkt. No. 10), and the court dismissed the United States from the case (Dkt. No. 19).[2]

On April 11, 2024, O'Dell filed a motion titled "Petition to Certify Employment,"

challenging the Attorney General's denial of coverage under § 233 on the ground that her actions

during the incident fell outside the scope of her employment with PATHS.  (Dkt. No. 16.)  The

United States filed a response in opposition (Dkt. No. 24), and O'Dell submitted a reply brief

(Dkt. No. 30).  A hearing was held on May 13, 2025, and the matter is now ripe for decision.

---

[2] This case remains in federal court under diversity jurisdiction as Wilson is a citizen of Virginia, O'Dell is
a citizen of West Virginia, and the amount in controversy exceeds $75,000.00.  *See* 28 U.S.C. § 1332.

## II.  DISCUSSION

O'Dell's motion asks the court to find that she was acting within the scope of her employment with PATHS at the time of the incident underlying this civil action.  Accordingly, she seeks certification under § 233, substitution of the United States as the defendant in her place, and dismissal of all claims against her with prejudice.  (*See generally* Br. Supp. Pet. Certify Employment, Dkt. No. 17.)

The threshold issue in O'Dell's motion is whether § 233 permits a district court to review a negative coverage determination made by the Attorney General.  In support of her position that such determinations are subject to judicial review, O'Dell relies on two sources of legal authority: (1) § 233(*l*)(2), and (2) the Westfall Act, 28 U.S.C. § 2679.  Because the court finds that neither § 233(*l*)(2) nor the Westfall Act authorizes judicial review of the Attorney General's negative coverage determination in this case, it need not address the issue of whether O'Dell was acting within the scope of her employment.  The court begins by outlining the relevant statutory provisions of § 233, followed by an analysis of each legal theory advanced in support of review.

### A.  42 U.S.C. § 233

The United States Public Health Service (PHS) is a uniformed service within the Department of Health and Human Services (HHS).  Under § 233(a), when a commissioned officer or employee of the PHS is sued for "personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions . . . while acting within the scope of his office or employment," the United States is substituted as the defendant.  The case then proceeds under the Federal Tort Claims Act (FTCA), which provides the exclusive remedy for the injured party.  *See* 42 U.S.C. § 233.  The Supreme Court has confirmed that § 233(a) "grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment."  *Hui v. Castaneda*, 559 U.S.

4

799, 806 (2010).

Section 233 extends similar protections to healthcare providers at federally funded health centers. Under § 233(g), such centers and their employees may be "deemed" PHS employees for purposes of malpractice liability. Once deemed, these entities and their employees receive the same protections as actual PHS employees. As such, "[w]hen deemed employees are sued for actions taken within the scope of their employment, the United States is similarly substituted as the defendant and the action proceeds as an FTCA suit." *Blumberger v. Tilley*, 115 F.4th 1113, 1117 (9th Cir. 2024) (citing 42 U.S.C. § 233(a)).

Section 233(g) outlines the application process by which entities may be deemed PHS employees by the Secretary of HHS (Secretary). *See generally* 42 U.S.C. § 233(g). Upon approval, the entity—as well as its officers, governing board members, employees, and certain qualified contractors—are deemed PHS employees for the relevant calendar year. *Id*. However, being deemed a PHS employee does not automatically confer immunity in all cases.[3]

For FTCA coverage to apply in a civil action, the Attorney General must make certain determinations after the suit is filed. Specifically, if a civil action is brought in state court against an entity or its personnel—who assert they are covered under § 233—the Attorney General must appear in that court within 15 days of receiving notice of the suit. *See* 42 U.S.C. § 233(*l*)(1). The Attorney General must then advise the court whether the Secretary has "deemed

---

[3] In *Blumberger*, the Ninth Circuit explained the key distinction between a "deemed" employee and a "covered" employee for purposes of § 233.

> The first denotes whether the Secretary has determined that a qualified entity's employees have PHS status for a "calendar year." 42 U.S.C. § 233(g)(1)(A). The second, whether the Attorney General has determined that a PHS employee was acting within the scope of his employment "at the time of the incident out of which the suit arose." *Id.* § 233(c).

*Blumberger*, 115 F.4th at 1128. The court described this distinction as "key to unlocking the statute's meaning." *Id.* at 1127.

[the defendant] to be an employee of the Public Health Service . . . with respect to the actions or omissions that are the subject of such civil action or proceeding." *Id.* If the Attorney General confirms that the defendant is a deemed PHS employee with respect to the actions or omissions that are the subject of the civil action, that satisfies the certification requirement under § 233(c), triggering removal of the case to federal district court, where it proceeds as an FTCA suit against the United States.[4] *Id.*

If the Attorney General fails to appear in state court within the 15-day period, § 233(*l*)(2) provides an alternative procedure. In such cases, the defendant may petition to remove the case to federal district court. *See* 42 U.S.C. § 233(*l*)(2). Upon removal, the case is stayed until the court holds a hearing and determines the appropriate forum or procedure for handling the claim. *Id.*

**B. Section 233(*l*)(2) Does Not Provide the Court Authority to Review the Attorney General's Negative Coverage Determinations.**

O'Dell first relies on § 233(*l*)(2) to support her argument that the court has the authority to review the Attorney General's negative coverage determination. (Br. Supp. Pet. Certify

---

[4] 42 U.S.C. § 233(c) provides:

> Upon a certification by the Attorney General that the defendant was acting in the scope of his employment at the time of the incident out of which the suit arose, any such civil action or proceeding commenced in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States of the district and division embracing the place wherein it is pending and the proceeding deemed a tort action brought against the United States under the provisions of title 28 and all references thereto. Should a United States district court determine on a hearing on a motion to remand held before a trial on the merit that the case so removed is one in which a remedy by suit within the meaning of subsection (a) of this section is not available against the United States, the case shall be remanded to the State Court: *Provided*, That where such a remedy is precluded because of the availability of a remedy through proceedings for compensation or other benefits from the United States as provided by any other law, the case shall be dismissed, but in the event the running of any limitation of time for commencing, or filing an application or claim in, such proceedings for compensation or other benefits shall be deemed to have been suspended during the pendency of the civil action or proceeding under this section.

Employment 1.)  The United States responded in opposition, arguing that § 233 does not confer

such authority on the court.  (Dkt. No. 24, 6–7.)  The court agrees with the United States.

The D.C. Circuit addressed review of negative coverage determinations under § 233 in *El*

*Rio Santa Cruz Neighborhood Health Center, Inc. v. United States HHS*, 396 F.3d 1265 (D.C.

Cir. 2005).  In *El Rio*, physicians sued for malpractice in Arizona state court sought FTCA

coverage under § 233, but HHS denied their request, concluding they were not deemed PHS

employees.  *Id.* at 1268.  The physicians removed the action to federal district court under §

233(*l*)(2), seeking review of the HHS's negative coverage determination.  However, the district

court found the removal untimely and remanded the matter to state court.  *Id.* at 1268–69.  The

physicians then filed a separate action in the District of Columbia under the Administrative

Procedures Act (APA), challenging HHS's negative coverage determination.  *Id.*  The district

court found it had federal question jurisdiction under 28 U.S.C. § 1331 to review the challenge,

and that no provision of § 233 precluded APA review.  It ultimately granted summary judgment

for the physicians, finding them qualified as PHS employees under § 233.

On appeal, HHS argued that the APA action was barred because § 233(*l*)(2) provided the

mechanism for judicial review of negative coverage determinations.  *Id.* at 1269.  The D.C.

Circuit rejected that argument, finding that "any remedy afforded by [§ 233] is too doubtful to

constitute an adequate remedy precluding APA review."  *Id.* at 1269–70.  The court explained

that "where a statute affords an opportunity for *de novo* district-court review . . . APA review [is]

precluded because Congress did not intend to permit a litigant challenging an administrative

denial to utilize simultaneously both the review provision and the APA."  *Id.* at 1270 (citation

modified).  In the case of § 233, the court concluded:

> [T]he FSHCAA text and legislative history show that the removal
> remedy under § 233(*l*)(2) was not designed to afford independent

district court review of the Secretary's negative coverage
determinations. The FSHCAA is silent regarding negative coverage
determinations. The removal section neither authorizes the federal
district court to make the deeming determination itself *de novo*, or
to overturn a negative coverage determination. Although the text of
§ 233(*l*)(2), when the Attorney General does not timely appear,
references a post-removal hearing by the district court to determine
the proper forum or procedure for the assertion of the claim, the
legislative history indicates this was intended to protect a covered
defendant against a default judgment due to the Attorney General's
untimeliness, rather than a negative coverage determination.

*Id.* at 1272.

The D.C. Circuit acknowledged that there was some appeal to treating § 233(*l*)(2) as the

procedural avenue for challenging negative coverage determinations, as doing so would

consolidate all coverage and procedural issues before a single federal judge, potentially reducing

litigation delays—one of Congress's stated concerns. *Id.* at 1273. If district courts were allowed

to conduct *de novo* reviews of coverage determinations or apply a comparable deferential APA

standard under § 233(*l*)(2), it might offer similar relief to an APA action. *Id.* However, the court

identified many fundamental problems with this approach.

Notably, § 233(*l*)(2) lacks a defined time frame for filing a removal petition. Courts

might apply varying standards—for example, 30 days from the HHS's notice of the lawsuit, 30

days after the Attorney General's 15-day window to appear, or perhaps the doctrine of laches—

leading to uncertainty and the risk that providers could inadvertently forfeit their ability to

challenge a negative coverage determination. Moreover, § 233 does not authorize district courts

to overturn a negative coverage determination upon removal, nor does it specify a standard of

review—whether *de novo* or the APA's deferential standard.

Ultimately, the court found that "APA jurisdiction would not 'duplicate' § 233(*l*)(2),

because the APA action is for the purpose of reviewing a negative coverage determination, while

§ 233(*l*)(2) is to protect a covered defendant against a default judgment when the Attorney

General fails timely to appear." *Id.* at 1275 (citation omitted).  Because Congress did not clearly intend to preclude APA jurisdiction, the court concluded that barring it would effectively deprive physicians of any effective means to challenge HHS's coverage determinations.  As such, the D.C. Circuit held that the district court had authority to review HHS's negative coverage determination under the APA.

Although *El Rio* involved an APA challenge to the Secretary's deeming determination—rather than the Attorney General's scope-of-employment determination at issue here—the same underlying principles apply.  Nothing in the text of § 233(*l*)(2) grants a district court authority to review the Attorney General's negative coverage determination.  While judicial review in this forum might be procedurally convenient for O'Dell, statutory authority is lacking.  As *El Rio* makes clear, § 233(*l*)(2) contains significant procedural gaps, notably the absence of any provision identifying the applicable standard of review.  Moreover, the legislative history "indicates [§ 233(*l*)(2)] was intended to protect a covered defendant against a default judgment due to the Attorney General's untimeliness"—not to provide for review of negative coverage determinations.  *El Rio*, 396 F.3d at 1272.

Additionally, the court notes that, unlike *El Rio*, O'Dell's case was not removed—or even attempted to be removed—under § 233(*l*)(2).  Thus, O'Dell's reliance on § 233(*l*)(2) as a basis for judicial review is misplaced.  O'Dell has not contested the Attorney General's compliance with the provisions of § 233(*l*)(1), nor has O'Dell argued that the United States' removal under § 233(c) was improper.  She only disputes the Attorney General's determination that she was not acting within the scope of her employment with PATHS at the time of the incidents underlying this action.  O'Dell appears to argue that § 233(*l*)(2) independently authorizes judicial review of

the Attorney General's negative scope-of-employment determination. However, the statute

plainly provides no such right. Accordingly, O'Dell's argument on this ground fails.

## C. The Westfall Act Does Not Provide the Court Authority to Review the Attorney General's Negative Coverage Determinations Under § 233.

O'Dell also argues that the Westfall Act, 28 U.S.C. § 2679, permits this court to review

the Attorney General's determination that she was not acting within the scope of her employment

under § 233. Although no binding precedent directly addresses the unique facts of this case, the

Ninth Circuit's decision in *Blumberger* offers instructive dicta regarding the intersection—or

lack thereof—between the Westfall Act and § 233. While the specific issue presented in

O'Dell's motion was not squarely before the *Blumberger* court , the dissent's reasoning, when

considered alongside *El Rio*, supports the conclusion that the Westfall Act does not infer judicial

review of the Attorney General's negative coverage determinations under § 233.

In *Blumberger*, the Attorney General timely appeared in state court within the 15-day

period set forth in § 233(*l*)(1), but did not advise the court whether the defendant had been

deemed a PHS employee by the Secretary. 115 F.4th at 1120. Instead, the government merely

indicated that the determination was "under consideration." The Attorney General did not

remove the case to federal court, and it was not until nearly a year later that the Attorney General

determined the defendant was not deemed a PHS employee with respect to the actions or

omissions at issue in the case.

The defendant subsequently removed the case to the U.S. District Court for the Central

District of California under § 233(*l*)(2).[5] *Id.* He argued that the Attorney General's appearance

---

[5] The defendant also relied on 28 U.S.C. § 1442 as a basis for removal. On appeal, the Ninth Circuit addressed the timeliness of the removal from state court to the U.S. District Court for the Central District of California under that statute. *See Blumberger*, 115 F.4th at 1121–26. This court does not discuss this aspect of *Blumberger* because it is not relevant to O'Dell's motion.

in state court was insufficient because the Attorney General failed to inform the court of his

deemed status as a PHS employee.  While acknowledging that the Attorney General was not

required to address whether he was acting within the scope of his employment, the defendant

maintained that the government was at least obligated to advise the court of his deemed status.

Because the Attorney General did not, the defendant argued that the government effectively

failed to appear under § 233(*l*)(1), making his own removal under § 233(*l*)(2) proper.  *Id.* at

1120–21.

On appeal, the Ninth Circuit addressed the Attorney General's obligations under

§ 233(*l*)(1) only requires the Attorney General to advise the state court whether the Secretary has

made a deeming decision—which the government did.  The court concluded that removal is

improper if the Attorney General timely appears, even if only to report that no determination has

yet been made.  *Id.* at 1121.

On appeal, the Ninth Circuit addressed the Attorney General's obligations under

§ 233(*l*)(1) when advising the state court "whether the Secretary has determined . . . [that the]

employee . . . is deemed to be an employee of the Public Health Service . . . with respect to the

actions or omissions that are the subject of such civil action or proceeding."  *Id.* at 1126–27.

The majority held that § 233(*l*)(1) requires only that the Attorney General advise the state

court whether the Secretary has deemed the defendant a PHS employee.  *Id.* at 1134–35.  If so,

the Attorney General must remove the case to federal court, where the scope-of-employment

determination may then be made.  The majority clarified that, while the Attorney General may

simultaneously make a scope-of-employment determination when advising the state court on the

defendant's deemed status, "it is an employee's deemed status, not covered status, that triggers

the removal provisions of § 233(*l*)(1)."  *Id.* at 1134.  Thus, "[a]ny advice the Attorney General

may give to the state court about its ultimate coverage decision has no legal consequence . . . under § 233(*l*)(1)." *Id.* As a result, the majority explained, "if the Attorney General advises that the defendant was deemed with respect to the actions or omissions giving rise to the suit but that the defendant was not acting within the scope of his employment, removal is [still] necessary."[6] *Id.*

The dissent disagreed, arguing that § 233(*l*)(1) requires only that the Attorney General appear in state court within the 15-day window and indicate whether a coverage determination has been made—not that the Attorney General must actually render such a determination within that timeframe. *Id.* at 1142 (Desai, J., dissenting). The Attorney General may simply advise the court that the determination remains "under consideration." *Id.* at 1146. The dissent also interpreted the phrase "actions or omissions" in § 233(*l*)(1) more broadly than the majority, concluding that it encompasses scope-of-employment determinations. *Id.* at 1145–47. It emphasized that "[a] state court action may be removed under § 233 in only two circumstances: (1) the Attorney General can remove the case after certifying that a 'defendant was acting in the scope of his employment at the time of the incident' giving rise to the suit, 42 U.S.C. § 233(c), or (2) a defendant can remove the case if the Attorney General 'fails to appear' in state court 'within the time period prescribed' in § 233(*l*)(1), 42 U.S.C. § 233(*l*)(2)." *Id.* at 1140–41; *see also Doe v. Centerville Clinics Inc.*, No. 23-2738, 2024 WL 3666164, at *1–2 (3d Cir. Aug. 6, 2024) (reaching the same conclusion and emphasizing that the Attorney General is not required to make a coverage determination within the 15-day window prescribed in § 233(*l*)(1)).

---

[6] The majority declined to address whether the defendant's removal under § 233(*l*)(2) was improper. *Blumberger*, 115 F.4th at 1140 (majority opinion). The dissent criticized the majority for sidestepping this central issue, arguing that it "invents a solution for [the defendant's] improper removal by concluding that the Attorney General should have removed the case." *Id.* at 1143 (Desai, J., dissenting).

Here, O'Dell does not challenge the Attorney General's removal of this case under § 233(*l*)(1). Rather, she disputes the post-removal determination that she was not acting within the scope of her employment with PATHS at the time of the events giving rise to this action. Thus, the court need not resolve the competing interpretations of § 233(*l*)(1). However, this background of *Blumberger* prompted the Ninth Circuit to discuss whether § 233 permits judicial review of negative coverage determinations—a discussion directly relevant to the issue raised in O'Dell's motion.

The majority in *Blumberger* concluded that a presumption of judicial review applies to the Attorney General's negative coverage determinations under § 233. It reasoned that a "contrary reading of the statute would effectively insulate the Attorney General's deeming advice to the state court—and the ultimate decision not to certify scope of employment—from judicial review." 115 F.4th at 1135 (majority opinion). The court grounded its conclusion in the Supreme Court's decision in *De Martinez v. Lamagno*, 515 U.S. 417 (1995), which supports a strong presumption in favor of judicial review of executive actions absent clear congressional intent to preclude it.

*De Martinez* concerned whether a plaintiff could challenge the Attorney General's certification under the Westfall Act that a federal employee acted within the scope of employment. 515 U.S. at 420. The case arose after a DEA agent allegedly caused a car accident while intoxicated in Colombia. Because the agent had diplomatic immunity from suit in Colombian courts, the plaintiff brought a diversity action in the U.S. District Court for the Eastern District of Virginia. Similar to § 233, the Westfall Act authorizes the Attorney General to certify an employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose." 28 U.S.C. § 2679(d)(1). If certified, the United

States is substituted as the defendant, the employee is dismissed, and the case proceeds as an

FTCA action. *De Martinez*, 515 U.S. at 419–20.

In *De Martinez*, the Attorney General certified that the agent was acting within the scope

of his employment. This certification would have been fatal to the plaintiff's claim because the

FTCA does not waive sovereign immunity for torts committed in foreign countries. *Id.* (citing

28 U.S.C. § 2680(k)). Although the Westfall Act expressly allows employees to challenge

negative certification decisions, s*ee* 28 U.S.C. § 2679(d)(3) ("In the event that the Attorney

General has refused to certify scope of office or employment under this section, the employee

may at any time before trial petition the court to find and certify that the employee was acting

within the scope of his office or employment."), it does not provide the same right to plaintiffs.

Nonetheless, the Supreme Court held the Attorney General's certification was subject to judicial

review. The Court emphasized the strong presumption in favor of judicial review of executive

action. It found no indication in the Westfall Act's text or legislative history that Congress

intended to foreclose review. Furthermore, the Court rejected the negative-implication argument

that judicial review was barred for plaintiffs simply because the statute expressly authorized a

right of review for employees.

The *Blumberger* majority acknowledged that *De Martinez* was not a perfect analogue, but

found its principles applicable. *Blumberger*, 115 F.4th at 1137. In *De Martinez*, the Attorney

General had an incentive to certify because doing so triggered sovereign immunity and shielded

the employee from liability without financial cost to the government. In *Blumberger*, the

Attorney General had an incentive not to certify because doing so would expose the government

to potential tort liability. While the impact of the certification differed—the plaintiff's claim in

*Blumberger* could still proceed against the individual defendant in state court—the majority

14

reasoned that both cases "represent two sides of the same coin: a scope-of-employment certification would essentially be dispositive of [a defendant's] immunity from suit as a PHS employee." *Id.*

Citing *De Martinez*, the majority emphasized the strong presumption in favor of judicial review of executive decisions. "If Congress intended 'to commit the critical 'scope-of-employment' inquiry to the unreviewable judgment of the Attorney General or her delegate, and thus to alter fundamentally the answer to the 'who decides' question,' we would expect Congress to do so clearly." *Id.* (citing *De Martinez*, 515 U.S. at 426). Because § 233 lacks any such language, the majority contends the presumption of reviewability remains intact.

The court also highlighted that *De Martinez* was decided just six months before Congress enacted § 233(*l*)(1), suggesting that Congress would have understood that judicial review was presumed unless expressly excluded. *Id.* at 1138. "[H]ad Congress wanted to depart from that default rule in [§ 233], it would have done so in unambiguous language, not 'the statutory fog we confront here.'" *Id.* (citing *De Martinez*, 515 U.S. at 425). The majority ultimately concluded that a proper reading of § 233(*l*)(1)—and one consistent with the principles articulated in *De Martinez*—is "that Congress *did* in fact provide for a hearing on scope of employment, albeit in a more convoluted way than in [the Westfall Act]." *Id.* at 1138.

Finally, the majority found the alternative review mechanisms proposed by the dissent—state court review or review through the APA—to be inadequate. *Id.* at 1138–39. Section 233 contains no provision authorizing state court review, and APA review raises other questions, such as whether the Attorney General's coverage determination constitutes a final agency action. Further, the majority warned that "an APA action would create greater inefficiency than it

solves," likely resulting in parallel litigation, delayed state court proceedings, and collateral estoppel concerns. *Id.* at 1139.

The dissent reached a different conclusion, arguing that "[i]f Congress intended to grant defendants broad removal rights to seek federal court review of coverage determinations, it would have said so." *Id.* at 1147 (Desai, J., dissenting). Unlike the Westfall Act, § 233 contains no provision authorizing a defendant to "petition the court to find and certify that the employee was acting within the scope of his office or employment." *Id.* (citing 28 U.S.C. § 2679(d)(3)).

It further argued that the majority's reliance on *De Martinez* was misplaced. The dissent explained that the Supreme Court in *De Martinez* highlighted how the Westfall Act's provisions "work together to assure that scope of employment disputes may be resolved in federal court, including the provision specifically allowing employees whose certification requests have been denied by the Attorney General to contest the denial in court." *Id.* at 1147 (citation modified). Moreover, the Court's discussion of the policy considerations favoring judicial review was grounded in the dispositive effect of the coverage determination on the underlying litigation. *Id.* at 1148 (citing *De Martinez*, 515 U.S. at 424 (noting that when a government official's determination "is dispositive of a court controversy, federal courts generally do not hold the determination unreviewable")).

In the dissent's view, this reasoning does not apply to § 233. Unlike the Westfall Act, § 233 lacks any provision allowing defendants to obtain judicial review of a negative scope-of-employment determination. The dissent cited the Supreme Court's decision in *Hui*, 559 U.S. at 807, which found it "telling" that Congress used different language in § 233 than in the Westfall Act. Likewise, the First Circuit has noted the differences between the statutes are "real, not simply technical." *See O'Brien v. United States*, 56 F.4th 139, 146 (1st Cir. 2022).

16

The dissent also emphasized a key factual distinction. In *Blumberger*, unlike in *De Martinez*, the Attorney General's refusal to certify the defendant's employment did not bar the plaintiff's claims. *Blumberger*, 115 F.4th at 1148. The case could still proceed against the individual defendant in state court. The dissent further noted that the defendant had an alternative path to challenge the Attorney General's decision by filing a claim under the APA in federal court. Indeed, the D.C. Circuit in *El Rio* held that challenges to the HHS's deeming decisions under § 233 may be brought through the APA. Based on these considerations, the dissent concluded that while defendants may pursue another avenue to contest negative coverage determinations, § 233 does not authorize removal to federal court for that purpose.

Considering the reasoning in the *Blumberger* dissent, along with the D.C. Circuit's ruling in *El Rio*, the court finds that it lacks authority under § 233 to review O'Dell's challenge to the Attorney General's determination that she was acting outside the scope of her employment with PATHS at the time of the incident giving rise to this action.

First, the *Blumberger* dissent highlights a critical statutory difference between the Westfall Act and § 233. While the Westfall Act expressly provides a mechanism for employees to seek judicial review of the Attorney General's scope of employment determinations, § 233 includes no such provision. As the dissent noted, "[i]f Congress intended to grant defendants broad removal rights to seek federal court review of coverage determinations, it would have said so." *Blumberger*, 115 F.4th at 1147. This court declines to read into § 233 a judicial review provision that Congress did not include. As the Supreme Court cautioned, "interpretative canons are not a license for the judiciary to rewrite language enacted by the legislature." *Corley v. United States*, 556 U.S. 303, 325 (2009) (Alito, J., dissenting) (cleaned up).

Second, the dissent identifies important differences between § 233 and the statutory framework of the Westfall Act that the Supreme Court analyzed in *De Martinez*. There, the Court emphasized that the Westfall Act's provisions "work together to assure that, when scope of employment is in controversy, that matter . . . may be resolved in federal court." *De Martinez*, 515 U.S. at 430–31. Section 233, by contrast, contains no such provisions. As the D.C. Circuit recognized in *El Rio*, § 233 "is silent regarding negative coverage determinations." 396 F.3d at 1272. Accordingly, there is no statutory basis to infer judicial review under § 233 akin to that available under the Westfall Act. To the extent the *Blumberger* majority suggested that Congress, having enacted § 233(*l*)(1) shortly after *De Martinez* was decided, must have intended to adopt a similar presumption of reviewability, this court agrees with the dissent that such an inference "is pure speculation, and it ignores that the Court expressly relied on the Westfall Act's provision for federal court petitions, yet Congress declined to enact a similar provision in § 233." *Blumberger*, 115 F.4th at 1147 n.4.

Third, unlike the plaintiff in *De Martinez*, O'Dell has an alternative means of challenging the Attorney General's negative coverage determination through a separate action under the APA.[7] As recognized in *El Rio*, APA review is available for executive actions related to § 233. Although *El Rio* addressed an HHS deeming decision rather than a scope-of-employment determination by the Attorney General, O'Dell has identified no authority—and the court is aware of none—precluding APA review of the Attorney General's negative coverage determinations. While this may delay proceedings or introduce inefficiencies, it is an available avenue that does not contravene the text of § 233.

_____

[7] O'Dell appears to attempt to assert an APA claim in her current motion. (*See* Br. Supp. Pet. Certify Employment 8–9.) However, such a claim constitutes a separate cause of action, independent of this case. Accordingly, the court need not—and does not—address any APA-based arguments made.

Accordingly, the court finds that neither § 233 nor the Westfall Act authorizes, nor can either be read to imply, judicial review of the Attorney General's negative coverage determination.  As such, O'Dell's motion to certify her employment will be denied.

III. CONCLUSION AND ORDER

For the foregoing reasons, it is hereby ORDERED that defendant Pamela Michelle O'Dell's motion to certify her employment (Dkt. No. 16) is DENIED.

The Clerk is directed to send a copy of this memorandum opinion and order to all counsel of record.

Entered: August 11, 2025.

/s/ Elizabeth K. Dillon

Elizabeth K. Dillon
Chief United States District Judge